Terence D. JONES,[1] Petitioner,

v.

Hillary K. GALLOWAY, Respondent.

In the interest of Darren Jones,
DOB: 08.20.00.

No. CS00–04531.

Family Court of Delaware.

Submitted Dec. 7, 2006.
Decided Dec. 14, 2006.

Mitchell W. May, Esquire of Funk & Bolton, P.C., Dover, Delaware, for Petitioner.

Hillary K. Galloway, mother, pro se.

HENRIKSEN, J.

On December 7, 2006, the Court held a trial to determine the custody and visitation of the above-named 6 year old child. Mother and father never married. They lived together for approximately 1–1/2 years and separated when the child was approximately 1 year old.

Through the mutual agreement of the parties, they have always shared joint cus-

1. Pseudonyms are used to protect the privacy of the parties.

tody with mother having primary placement. Father has had frequent and liberal visitation. Following father filing his Petition on April 18, 2005, the parties entered into a Temporary Consent Order whereby they shared joint custody, physical placement remained with mother, and father was awarded visitation somewhat along the standard guidelines of the Court, but recognizing the 4–1/2 hours between the parties' residences, with mother living in Seaford, Delaware and father living near Harrisburg, Pennsylvania.

Pursuant to Title 13, Section 701(a), a father and mother are the joint natural guardians of their minor children, and are equally charged with their childrens' support, care, nurture, welfare, and education. Where the parents live apart, it falls upon the Court to determine with whom the children shall primarily reside, and to also set forth the schedule of visitation consistent with the childrens' best interest and maturity, which is designed to permit and encourage the children to have frequent and meaningful contact with both parents.[2] Regardless of who is awarded placement, all parents and other persons are encouraged to foster ... frequent and meaningful contact, in person, by mail and by telephone, between parents and children ..."[3] If the Court finds that this obligation is violated, the Court has the power to remedy this violation by awarding, among other things, extra visitation, a temporary transfer of custody or primary residence, a fine, and even, imprisonment.[4]

In making its decision as to the placement of this child, the Court did not presume that one (1) parent, because of his or her sex, was better qualified than the other parent to act as the primary residential parent.[5]

 The Court is required to consider each of the factors set forth in Title 13, Section 722 as well as any other relevant factors the Court may deem appropriate. The Court must consider each factor independently and then give each individual factor *"its due weight and importance relative to the other factors in a manner reflecting the best interest of the child in question."* [6] The Court does not adopt a "mechanical or perfunctory approach" whereby each factor is weighed equally, and the child's best interests are resolved by placing the child with the parent who prevailed on the most factors.[7]

In making its decision on the proper placement for Darren, the Court considered all relevant factors to determine the best interest of the child, including the following factors set forth in Title 13, Section 722 (a):

 *Parents' wishes and residential arrangements:* Both parents agreed to share joint custody of the child and each parent would like to have primary placement of the child. Also, each parent agreed that the non-placement parent should have the visitation which father presently has under the Temporary Consent Order dated June 7, 2005. In summary, the visiting parent, except during time periods identified as winter and spring breaks, as well as summer visitation, would see the child every other weekend and the parties would exchange the child at Friendly's Restaurant on Route 896 North in Newark, Delaware.

2. Tit. 13, Section 728(a).

3. Tit. 13, Section 728(b).

4. *Ibid.*

5. Tit. 13, Section 722(b).

6. *Holmes v. Wooley,* 788 A.2d 131, 2002 WL 27436 (Del.Supr.2002).

7. *Ibid.*

Mid-week visitation was not applicable. The schedule sets forth a sharing of holidays and school breaks, and also provides for the usual 5 weeks of summer visitation, in increments of no greater than 2 weeks nor less than 1 week at a time.

Twenty-seven year old father resides in a townhouse he purchased along with his 26 year old wife, Megan, in May of 2005. The townhouse is a two story building located in a community of 500 other townhouses. The community contains a fenced-in pool, several playgrounds, and is mostly occupied by young people with children who are buying starter homes. The child has made many friends in the community.

Father has been working for the past 3 years as a UPS delivery person. His hours are generally Monday through Friday from 9 to 5. At the present time, he is working extra hours which should conclude around December 31st. Father and Darren have known father's wife for at least 5 years. Father and Megan married in September of 2005. Megan is employed in web and graphic designs for the Pennsylvania House of Representatives, where she has worked for the past 3 years. Megan's work hours are Monday through Friday from 9 to 4:30. Father is pursuing a 4-year college degree and has attained junior status. He anticipates receiving his Bachelor of Science degree in Computer Technology in May of 2008. The Court notes, that in addition to father thus far having achieved his junior year in college, that his wife, Megan, has a 4 year Bachelor of Arts Degree from Penn State University.

Father left the Delaware area for a better job and to pursue his education so that he could better provide for his son.

For the past year, mother has been renting a 1 bedroom apartment in Seaford, Delaware. The child sleeps in the living room on a fold-out bed or on the couch. At times when the living room ceiling has leaked, mother had the child sleep in bed with her or stay at the home of maternal grandmother who lives in Bridgeville, Delaware. Mother described concerns about her apartment where ceilings have fallen down in other units and she also has concerns that the landlord was slow in fixing areas where cold air blew in.

Mother has been employed for the past 3-1/2 years at Rose's Department Store. She works Monday, Thursday, Friday and Saturday from 9 to 5 and Tuesday from 1 to 9. Mother has Wednesday and Sunday off. While father is presently earning approximately $38,000 a year and his wife, Megan, is earning approximately $33,000 a year, mother earns approximately $12,000 a year. Mother is a high school graduate.

The Court observed a considerable difference in the grammatical quality of speech of father and Megan as compared to mother.

Mother is 25 years of age and has a 19 year old boyfriend named Dion Howard. According to mother, Dion works at Perdue. Mother testified that Dion did not have a criminal record. According to mother, Dion comes and goes as he pleases and does not necessarily present a father figure for the child.

*Child's wishes:* Although the Court interviewed 6 year old Darren, it was difficult to determine Darren's wishes as to his placement. He stated he wanted a telescope for Christmas. Darren said his stepmother, Morgan, taught him how to tie his shoes, and his mother taught him how to ride a bicycle. Although mother said that her boyfriend does not sleep over every night, Darren stated that he did. The child's statements indicated a clear connection between himself and his stepmother, in addition to his parents. Darren said he likes school and that he was doing

well in school. When asked about the type of music he likes, the child noted certain Christmas carols, such as Feliz Navidad and Rudolph the Red–Nosed Reindeer. His mother and relatives had taken him to see a Christmas parade this year. The Court could not discern from the interview any clear desire of the child about with whom he would like to primarily reside.

*Interaction and interrelationship of child with significant others:* Neither father nor Megan have any close relatives living near them in the Harrisburg, Pennsylvania area. Father's mother lives in Delmar, Delaware, along with father's 18 year old brother and 15 year old sister. Father's mother and his siblings see the child occasionally. Father and his wife, along with the child, are involved with surrounding community members, as well as in the church. When the child is with father, he has fun playing with other children, he likes to fish, racing cars, and he enjoys playing the role model of a teacher in school. With father, the child attends the YMCA and also attends kid's church while the adults attend regular church.

Mother has several relatives who are familiar and interact with Darren in the area. Maternal grandmother, who often takes care of Devon, lives in Bridgeville, Delaware. Mother also has a 23 year old brother with children in Milton, Delaware, a 28 year old sister with children in Houston, Delaware, and a 30 year old sister with children in Dover, Delaware. Mother said that she and her siblings and children often get together on weekends at her mother's house.

*Child's adjustment to home, school and community:* The child presently attends a full-day kindergarten in the Seaford School District. If the child were to reside with father, he would attend the Red Mill Elementary School which is 3 miles from father's home, to which the child would be bussed. The Red Mill kindergarten class is a half-day program. From the kindergarten class, the child would be shuttled to a program called "Laugh and Learn", which is taught by certified teachers. The child would then be picked up by father or Megan between 4 and 5 p.m.

Although the child did not do well last year in school, and had to repeat his kindergarten year, he appears to be doing well at this time.

*Mental and physical health:* It appeared that the parents, including stepmother, are all in good mental and physical health. Although the child required a nebulizer when he was younger, he has no need for it at this time.

*Past and present compliance of both parents with their rights and responsibilities to their child under Title 13, Section 701:* Pursuant to Title 13, Section 701, parents are equally charged with their childrens' support, care, nurture, welfare and education. In addition, as the Court noted at the beginning of this opinion, each parent has the responsibility to encourage their child to have significant and meaningful contact with the other.

Mother acknowledged that upon the separation of she and father that father immediately began paying her regular support. Father has also maintained the child on his medical health and dental plans and has always provided mother with the necessary cards and documentation regarding those plans.

Although father and stepmother traveled on at least 4 occasions last year the 4–1/2 hours from their home in Pennsylvania to meet with educators in the Seaford School District about concerns about the child and the development of an individualized educational plan (IEP) for the child, mother never appeared at any of the meetings. Mother indicated she did not have

the time nor could she get off of work to attend these meetings. The Court also notes that, despite the requirement of the Court for parents to participate in and complete parent education programs, that mother has not completed her parent education program. Again, mother noted that she did not have the time. Father completed his program. There was at least 1 occasion where father was unable to get in touch with mother because mother's telephone had been disconnected. Father stated the phone was disconnected on more than 1 occasion, but mother stated it was only disconnected once. On another occasion, mother had to change her telephone number because of problems she was experiencing with some of her boyfriends' friends. It also appears that maternal grandmother is raising the child at least half of the time.

*Evidence of domestic violence:* Each of the parties indicated that there has been no domestic violence between them. The court is concerned, however, that mother had a fairly recent incident, observed by the child in mother's apartment, where mother was attacked by other adult women which involved the women hitting each other and eventually leading to the fight being taken outside. According to mother, this fight, which occurred in September 2006, involved jealousy surrounding mother's current boyfriend. Although mother said that the child only observed one fight, the child estimated that he had seen mother involved in at least five fights.

*Criminal history of the parties and significant others:* Neither parent had a significant criminal record other than motor vehicle-related speeding and seat belt violations, with mother's most recent speeding violation having occurred in July 2005, and father's most recent speeding violation, at least in Delaware, having occurred in November 2002. Of concern, however,

is the criminal record of Dion D. Howard, born November 5, 1987, who is mother's present boyfriend. As already noted, mother acknowledged that she has been involved in fist fights with women who are jealous of the relationship between mother and Mr. Howard. Mother described Mr. Howard as an individual who comes and goes as he pleases and who sleeps over occasionally. Mother stated that "Dion goes uptown with his boys." Dion's record revealed numerous speeding violations in October 2006, April 2006, May 2005, and August 2004. Dion's criminal record also showed convictions in June 2005 and April 2005 for Playing Music Too Loud in Motor Vehicle.

## CONCLUSION AND ORDER

Having considered all of the above, the Court is of the opinion that it is in the child's best interests, in addition to the parents sharing joint custody, that primary placement be awarded to father beginning at noon on January 1, 2007 when, if the child is not already in father's care, the parties shall exchange the child at the usual place of exchange in Newark, Delaware. At this point in the child's life, father and stepmother offer greater stability for this child in an environment that will emphasize the future educational development of the child. Mother, on the other hand, appears to have an extremely unstable relationship with her present boyfriend. Furthermore, mother's present relationship with her boyfriend has placed mother into at least one violent situation which, unfortunately, the child had to witness. The Court is also concerned that mother has not followed through with this Court's Orders by being seriously late for visitation on at least one occasion, and having failed to take the time to complete the parent education program. Of even greater concern, however, is mother's fail-

ure last year to have attended any of the four IEP meetings concerning her son.

Mother's visitation shall be the same alternate weekend and summer visitation as awarded father in the Court's Temporary Consent Order of June 7, 2005. All other terms of visitation in that Temporary Consent Order shall remain the same. Thus, mother shall continue to have the child for holidays in Column I in odd-numbered years and holidays in Column II in even-numbered years. Father shall continue to have the child for holidays in Column I in even-numbered years and holidays in Column II in odd-numbered years. Furthermore, the out-of-state relocation requirement shall recognize that mother presently resides in Delaware and father in Pennsylvania.

IT IS SO ORDERED.